UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINDA PRZYBYLA,<br><br>            Plaintiff,<br><br>     v.<br><br>THE PRUDENTIAL INSURANCE COMPANY OF AMERICA,<br><br>            Defendant. | Case No. 3:24-cv-01090-JSC<br><br>**ORDER RE: RULE 52 MOTIONS**<br><br>Re: Dkt. Nos. 25, 26 |

Linda Przybyla sues the Prudential Insurance Company of North America under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B)[1] for failure to pay long-term disability ("LTD") benefits. Prudential denied Plaintiff's LTD claim concluding she had not demonstrated she was unable to perform the substantial and material acts of her usual occupation as an "Engineering Coordinator-New Business" with reasonable continuity. The parties' cross-motions for judgment under Federal Rule of Civil Procedure 52 are now pending before the Court. (Dkt. Nos. 25, 26.[2]) This Order comprises the findings of fact and conclusions of law required by Federal Rule of Civil Procedure 52(a).[3] Having considered the totality of the evidence in the record and having had the benefit of oral argument on December 19, 2024, the Court concludes Plaintiff has met her burden of demonstrating disability under the Plan and GRANTS her motion for judgment and DENIES Prudential's cross-motion for judgment.

---

[1] At oral argument, Plaintiff confirmed she withdrew her equitable relief claim under 29 U.S.C. § 1132(a)(3).

[2] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

[3] To the extent that any findings of fact are included in the Conclusions of Law section, they shall be deemed findings of fact, and to the extent that any conclusions of law are included in the Findings of Fact section, they shall be deemed conclusions of law.

# I. FINDINGS OF FACT

## A. Prudential LTD Plan Terms

Plaintiff was a participant in a group long term disability plan (the "Plan") sponsored by her employer, California Water Service Company, and insured by Prudential. (Complaint, Dkt. No. 1 at ¶¶ 6-7; Administrative Record ("AR") 2758.) The Plan provides a monthly benefit if a claimant becomes disabled while covered under the plan and the claimant remains continuously disabled throughout a 180-day Elimination Period. (AR 2776.)

The Plan provides coverage for individuals who are "totally disabled" and those who are "partially disabled." (AR 2785.) Under the Plan:

> You are totally disabled when as a result of your *sickness* or *injury*:
> - you are unable to perform with reasonable continuity the *substantial and material acts* necessary to pursue your *usual occupation*; and
> - you are not working in your usual occupation.
>
> After 24 months of payments, you are totally disabled when, as a result of the same sickness or injury, you are unable to engage with reasonable continuity in any occupation in which you could reasonably be expected to perform satisfactorily in light of your age, education, training, experience, station in life, and physical and mental capacity.

(AR 2785.) The Plan defines "substantial and material acts" as "the important tasks, functions and operations generally required by employers from those engaged in your usual occupation that cannot be reasonably omitted or modified." (AR 2785.) Coverage ends under the Plan on "the last day you are in active employment." (AR 2783.) As proof of claim, Prudential requires, as relevant here:

> 1. That you are under the **regular care** of a **doctor**.
> …
> 3. The date the disability began.
>
> 4. Appropriate documentation of the disability disorder.
>
> 5. The extent of your disability, including restrictions and limitations preventing you from performing your usual occupation or any occupation in which you could reasonable be expected to perform satisfactorily in light of your age, education, training, experience, station in life, and physical and mental capacity.
>
> 6. The name and address of any **hospital** or **institution** where you received treatment for your disability, including all attending doctors.

(AR 70 (emphasis in original).)

2

### B. Plaintiff's LTD Application

On November 14, 2022, Plaintiff, who was 58 at the time, submitted an application for LTD benefits claiming disability as of May 11, 2022 when she stopped working. (AR 13.) During a January 3, 2023 call with a Prudential representative, Plaintiff stated she stopped working due to pain, difficulty walking, dizziness, and vestibular migraines. (AR 234.) She reported she was participating in physical therapy (PT) two to three times a week for cervical spine stenosis and for her legs, and that she needed assistance with the activities of daily living. (AR 234.) In her Activities of Daily Living Questionnaire, Plaintiff reported chronic pain in both arms, hands, and legs; stiffness; numbness; tingling; migraines; dizziness; vomiting; blurred vision; tremors; slurred speech; pain in joints; cervical pain; skull pain; muscle spasms; temperature sensitivity; difficulty swallowing; depression; trouble sleeping; fatigue; slow movement; short-term memory problems; concentration problems; panic attacks; loss of appetite; shoulder pain, difficulty walking; ears ringing; imbalance; and sensitivity to light. (AR 331-332.)

### C. Medical Evidence Predating Plaintiff's LTD Application

Plaintiff's treating physician Dr. Cameron Oba submitted a statement on December 22, 2022 representing Plaintiff was unable to work and providing diagnoses of fibromyalgia, ataxia, and fatigue. (AR 140-142.) While he estimated Plaintiff would be able to return to work by April 1, 2023, three months later he stated Plaintiff's disability was permanent. (AR 141, 1152.)

Plaintiff's medical records with Dr. Oba reflect treatment before and after the date of disability. On January 18, 2022, Dr. Oba referred Plaintiff to neurology based on "right upper extremity tingling/pain with right hand weakness" and "bilateral lower extremity pain/spasm history." (AR 816.) On April 8, 2022, Dr. Oba saw Plaintiff for enlarged lymph nodes and malaise and fatigue. (AR 1174.) Plaintiff reported feeling depressed nearly every day and had lost interest or pleasure in doing things. (AR 1179.) Dr. Oba noted she continued to have neck pain, bilateral arm pain, fatigue, palpitations, stress, and sleep issues and was seeing a neurologist for help with those issues. (AR 1180.) A month later, Plaintiff saw Dr. Oba for a follow-up and he noted she was feeling very lightheaded, nauseous, and dizzy. (AR 1230.) Plaintiff reported she had difficulty walking and was using a walker. (AR 1237.) She tested positive for vertigo and

was referred to ENT/Otolaryngology. (AR 1241.) In August 2022, Dr. Oba documented ongoing complaints of numbness pain and discomfort in her arms, significant fatigue, and difficulty walking. (AR 1297.) He observed an abnormal, slightly ataxic gait. (AR 1301.) On December 1, 2022, Plaintiff presented with persistent symptoms of significant fatigue, difficulty walking, and difficulty standing. (AR 1370.) She was using a cane/walker for balance at home. (AR 1370.) Cymbalta seemed to help with her headaches and body symptoms. (AR 1370.) He concluded her symptoms had not improved enough to warrant a return to work. (AR 1375.)

Plaintiff saw her neurologist, Dr. Hovsepian, on February 15, March 3, and April 7, 2022. (AR 246, 1634.) Plaintiff reported tingling and numbness in her hands and feet, weakness in both arms, and dizziness. (AR 246.) She had MRIs of the brain and lumbar, as well as EMGs of the arms and legs. Dr. Hovsepian noted Plaintiff was positive for tremors, weakness, light-headedness, numbness and headaches, although she was able to walk with a normal base and stride. (AR 248.) Her MRI reflected multilevel degenerative changes of the cervical spine, mild degenerative retrolisthesis, moderate spinal canal stenosis, and multilevel neural foraminal narrowing. (AR 249.) Dr. Hovsepian concluded her arm symptoms were likely related to cervical stenosis and cervical radiculopathy, possible trigeminal neuralgia, and possible neuropathy. (AR 249.) He ordered labs and recommended she start Flexeril and continue with physical therapy. (AR 249.) During an August 5, 2022 follow-up visit, Plaintiff reported her symptoms were the same: numbness, tingling in her extremities, weakness, dizziness, lightheadedness, and headaches. (AR 252.) At a December 5, 2022 visit, Dr. Hovsepian recorded her symptoms were stable, but her headaches had improved with Cymbalta. (AR 258.) He also noted she walked with an unsteady gait, and was unable to tandem walk and walk on heels and toes without difficulty. (AR 261.)

Throughout this time period, Plaintiff was participating in physical therapy 2-3 times per week to address her neck pain, extremity numbness and tingling, and dizziness. (AR 428.) She had 166 physical therapy treatments between April 2022 and September 2023. (AR 423-807.)

### D. Prudential's Initial Denial

Prudential VP and Medical Director Dr. Amy Cao and Prudential vocational specialist

4

Steve Lamber reviewed Plaintiff's initial application.

Dr. Amy Cao conducted her review on March 22, 2023. (AR 1492.) She reported Plaintiff was being treated

> for fibromyalgia, mild cervical stenosis and cervicogenic headaches. She does have mild degenerative changes and mild neural foraminal stenosis in the cervical spine at multiple levels which may contribute in part to symptoms of upper extremity numbness/ tingling and neck pain however does not explain severe fatigue, gait and balance difficulties, depressive symptoms nor cognitive symptoms. She has suspected fibromyalgia and has demonstrated improvement with physical therapy and increasing dose of Cymbalta, which is consistent with this diagnosis.

(AR 1494.) Dr. Cao found it was reasonable to limit Plaintiff to occasional reaching overhead, occasional lifting of up to 20 pounds, frequent reaching at desk level, frequent fingering/handling, and occasional neck extension based on her "mild multilevel cervical degenerative spine disease." (AR 1494.) While Plaintiff's physicians noted her gait as abnormal, Dr. Cao found there was no identified underlying pathology to support limitations and there was insufficient evidence to support an impairment based on fatigue or migraines. (AR 1495.)

Vocational Specialist Steve Lambert likewise reviewed Plaintiff's file on March 23, 2023 and concluded Plaintiff's usual occupation is performed at a sedentary level and that it could be performed consistent with the limitations set forth by Dr. Cao. (AR 1527-29.)

So, Prudential denied Plaintiff's claim concluding "[y]our medical condition would not prevent you from performing your usual occupation as outlined above. Therefore, you would not be considered disabled as defined in the enclosure." (AR 1562.) In reaching this conclusion Prudential reviewed the medical records from Dr. Oba, Dr. Hovsepian, and More Physical Therapy. (AR 1561.)

### E. Plaintiff's First Appeal

Plaintiff, through counsel, appealed Prudential's denial. (AR 1642-1654.) Plaintiff submitted additional evidence in support of her appeal including letters from Dr. Hovsepian, Dr. Oba, Dr. Parameswaran, Dr. Sajjadi, Plaintiff, and her husband.

#### 1. Dr. Oba's Letter

Plaintiff's treating physician Dr. Oba submitted a letter in support of Plaintiff's LTD

application and in response to Dr. Cao's assessment. (AR 1636.) His letter was based on his review of Plaintiff's medical records and his 20 years as Plaintiff's treating physician and reported the following.

Dr. Oba observed a "precipitous drop in [Plaintiff's] health condition" during a full examination on February 2, 2022. (AR 1636.) Plaintiff "vocalized a multitude of symptoms, that was affecting her work performance and overall wellbeing" and he recommended physical therapy two days a week and three weeks away from work. (AR 1636.) During a follow-up visit a month later, her condition had not improved and she was no longer capable of maintaining a regular work schedule. (AR 1636.) "[A]s reported in [Plaintiff's] medical record," Plaintiff had "significant gait difficulties/ataxia requiring a cane for ambulation and IADLs were affected due to pain and fatigue." (AR 1636.) At that visit he recommended increasing physical therapy to three times a week and being off work 90 days. (AR 1636.) During office visits in June, September, and December 2022, Plaintiff did not show any improvement despite various drug therapies recommended by specialists. (AR 1636.) He therefore extended her medical leave and physical therapy referral after each examination. (AR 1636.)

Dr. Oba recommended permanent medical leave/long term disability on March 6, 2023, after Plaintiff showed no improvement despite physical therapy and drug therapies. (AR 1637.) He described Plaintiff's conditions as: "[c]hronic pain in her bones and cervical spine" which "can be attributed to diagnosed cervicalgia, radiculopathy, degenerative disc disease, stenosis, and fibromyalgia"; "Migraine headaches"; "Vertigo, double-vision, and nausea"; "[c]hronic fatigue"; "[g]ait difficulties, walking and standing imbalance attributable to dizziness, ataxia, and vertigo"; "[m]uscle weakness, spasm/myoclonus, anxiety and insomnia"; "depression/anxiety"; and "tremors." (AR 1637.) Dr. Oba's letter concluded:

> Any one of the above conditions, independently or co-morbidly, cause Linda to be disabled from working any regular occupation, even a desk job. With a desk job that requires mostly sitting, she would still suffer from regular back pain, and migraine headaches with associated dizziness, fatigue and tremors. Minor tasks, simple IADLS, let alone work, could result in increased pain/fatigue. Due to her pain and extremity numbness, she cannot frequently handle objects like telephones or type on a keyboard, basic requirements of a desk job. Her pain, gait imbalance and dizziness mean that she is a

fall risk.

(AR 1638.)

Dr. Oba disagreed with Dr. Cao's assessment that Plaintiff could stand or walk frequently noting Plaintiff was a "significant fall risk."  (AR 1639.)  He also disagreed with Dr. Cao's conclusion there was no evidence to support impairing levels of fatigue, specifically noting he had observed her fatigue during in-person physical examination.  (AR 1639.)  Likewise, Dr. Oba disagreed with Dr. Cao's rejection of Plaintiff's complaints of abnormal vision noting "there a multiple cases of vision/vertigo symptoms that may not have objective evidence on physical exam."  (AR 1639.) Dr. Oba emphasized it was "very difficult to clinically evaluate a patient based upon a review of a medical chart" because it "fails to properly consider the collective impact of all these co-morbidities, which render [Plaintiff] incapable of working any kind of regular job, even a sedentary one."  (AR 1639.)

### 2. Dr. Hovsepian's Letter

Plaintiff's neurologist Dr. Hovsepian also submitted a letter in support of Plaintiff's LTD application and in response to Dr. Cao's assessment.  (AR 1634-1635.)  He stated, in relevant part:

> I have primarily treated Linda for pain and weakness, most notably in her back and extremities, as well as an associated numbness and tingling in her extremities. She also has headaches, dizziness, vertigo and double vision, gait difficulties, weakness, trouble sleeping and anxiety. I diagnosed Linda with cervical stenosis of the spinal canal, cervical radiculopathy, lumbar radiculopathy, non-intractable headaches, neuropathy, and arthralgias. As a result of her diagnoses, Linda suffers from general pain throughout her body, tingling, numbness, burning sensations in her extremities, associated weakness, and frequent tremors. These conditions collectively contribute to her gait imbalance, which creates a fall risk. Linda suffers from headaches which are likely cervicogenic in nature, again attributable to her degenerative spine conditions. She complains of intermittent vision problems, which could be related to her headaches. Linda has also been diagnosed with Fibromyalgia and is treating with a Rheumatologist.
>
> I am also aware that Linda suffers from hypothyroidism. These conditions and the related treatments, combined with her pain, numbness, tingling and burning sensations from her degenerative spine conditions, contribute to her significant sleep difficulties and fatigue.
>
> Linda regularly and diligently attends physical therapy which helps to temporarily alleviate her pain symptoms to some degree. While these

> sessions are helpful, they have not resulted in any significant improvement in her symptoms. Linda has been seen to be anxious and depressed, which are also common traits attributable to her conditions. Linda also suffers from short term memory and concentration problems. These symptoms are not surprising given her combined symptoms of pain, migraine headaches, sleeping difficulty and fatigue.
>
> These conditions referenced above, independently and collectively, prevent Linda from working a regular occupation, including a desk job… Linda requires regular rest and treatment to minimize pain and migraine headache flare-ups. This would cause her regularly miss work due to her pain, fatigue, and the need to rest or obtain medical treatment.
> . . .
> I respectfully disagree with Dr. Cao's medical review and conclusion for Prudential that Linda does not have "remarkable" findings from a neurological standpoint.  Her degenerative spine conditions and associate pain, numbness and neurogenic headaches are significant.
> …
> Her vision symptoms could be related to her headaches.  These conditions are real and make it impossible for her to work with any regularity.

(AR 1634-1635.)

### 3. Dr. Parameswaran's Letter

Plaintiff's rheumatologist Dr. Parameswaran submitted a letter in support of Plaintiff's LTD application. (AR 1640.)  Dr. Parameswaran had been treating Plaintiff since December 2022.  Dr. Parameswaran stated Plaintiff had been diagnosed with "generalized osteoarthritis and fibromyalgia" noting she had "all the symptoms of fibromyalgia with widespread pain, paresthesias, fatigue, cognitive problems, sleep problems and migraines." (AR1640.)  Plaintiff had also been diagnosed with "shoulder osteoarthritis and adhesive capsulitis." (AR 1640.)   Dr. Parameswaran witnessed an incident of her severe muscle weakness and paresthesias when her legs gave out beneath her while she was in the office. (AR 1640.)  Due her diagnoses and multiple co-morbidities, pain and severe other symptoms, Dr. Parameswaran concluded Plaintiff was unable to work. (AR 1640.)

### 4. Dr. Sajjadi's Records

Plaintiff also provided her medical records from an August 22, 2022 visit with ENT Dr. Sajjadi. (AR 1454-1458.)  Dr. Sajjadi was unable to test her gait because she wobbled back and forth while standing and had to hang on to something or she would fall. (AR 1457.)  He

8

concluded her imbalance could be the result of vestibular migraines and recommended additional testing and a follow-up with her neurologist to discuss vestibular migraines. (AR 1458.)

### 5. Plaintiff's Declaration

Plaintiff submitted a declaration detailing her medical history and how her disabilities impacted her day-to-day life, including her ability to work. (AR 1655-1661.)

### 6. Mr. Przybyla's Declaration

Plaintiff's husband also submitted a declaration in support of her appeal describing her disabilities and his current role as her caretaker. (AR 1662-1670.)

## F. Plaintiff's California State Disability Claim

On August 16, 2023, Plaintiff advised Prudential that her claim for California State Disability had been approved. (AR 1687.)

## G. Prudential's Denial of Plaintiff's First Appeal

After Plaintiff appealed, Prudential had her claim reviewed by Dr. Stephen Selkirk (neurology) and Dr. Elizabeth Bonson (occupational medicine). (AR 1728-1751.)

Dr. Selkirk reviewed Plaintiff's medical records and concluded "from a neurological perspective restrictions and limitations are not supported from 5/11/22 forward." (AR 1734.) In reaching this conclusion he noted Dr. Hovsepian had documented "variable weakness, none of which would be considered impairing," her brain MRI was normal, her cervical spine MRI showed only moderate canal stenosis, and the clinical data did not otherwise support her reported symptoms because among other things she had never been referred to a tertiary headache center, parenteral medications, or vestibular therapy. (AR 1734.)

Dr. Bonson reviewed Plaintiff's medical records and likewise concluded they did not support Plaintiff's claim of disability and in fact concluded she had "no limitations/restrictions." (AR 1740-1751.) Dr. Bonson disagreed with the opinions of each of Plaintiff's providers because (1) they were unsupported by the imaging and other studies, (2) Plaintiff had not responded to treatment—physical therapy—as one would expect, and (3) Plaintiff had not pursued additional consultations or been referred for expected treatments like epidural steroid injections. (AR 1749.)

On September 15, 2023, Prudential denied Plaintiff's first appeal. (AR 1795.) Prudential

found "based on the totality of [Plaintiff's] medical conditions, no medically necessary restrictions and limitations are supported. (AR 1802.) In particular, Prudential concluded:

> Based on the information in file, no medically necessary restrictions and limitations were supported. [Plaintiff's] imaging and other studies were normal and/or consistent with her age and showed no signs of instability. There was no neurological condition to explain your client's symptoms. While your client reported multiple medical conditions and corresponding symptoms as outlined above, her physical exam findings were not consistent among providers or consistent with her reported limitations. Additionally, [Plaintiff's] imaging and other studies were not consistent with the severity of her symptoms or her reported limitations. Also, she did not respond to treatments as one would expect (with extensive physical therapy, one would expect some documented improvement in functional ability). The records also had gaps in regard to expected consultations (such as physiatry, ophthalmology) and expected treatments (such as epidural steroid injections or other medications).

(AR 1802.)

### H. Plaintiff's Second Appeal

Plaintiff submitted additional evidence in support of her claim on November 6, 2023, including further treatment records with Dr. Sajjadi, additional physical therapy records, and a second declaration from Mr. Przybyla. (AR 1913-2355.) Dr. Sajjadi reiterated his diagnosis of possible vestibular migraine and noted she might also have a variant with persistent postural perceptual dizziness. (AR 1917-1919.) Dr. Sajjadi referred her to a neurologist for additional follow-up including vestibular physical therapy. (AR 1919.)

About a month later, Plaintiff submitted additional information, including additional medical records from Dr. Hovsepian, and physician letters of support from Dr. Oba and Dr. Parameswaran, and Plaintiff's physical therapist Anna Lawrence. (AR 2379-2449.)

#### 1. Medical Records From Dr. Hovsepian

During a September 11, 2023 office visit with neurologist Dr. Hovsepian, Plaintiff complained of frequent double vision, fatigue, difficult sleeping, tingling and numbness, vertigo and vomiting, and a recent fall. (AR 2382.) She was currently taking Lyrica and Flexeril. (AR 2382.) He noted Plaintiff walked with an unsteady gait. (AR 2385.) He continued to diagnose Plaintiff with cervical stenosis and radiculopathy, he found her headaches likely related to cervicogenic headaches but noted they had features of migraines as well, her right-side numbness

1  raised a concern for trigerminal neuralgia, her leg symptoms could be the result of a neuropathy or

2  lumbar radiculopathy, and her double vision was of unclear etiology. (AR 2386.) He adjusted her

3  medication, asked that she continue physical therapy, and follow-up with rheumatology. (AR

4  2386.)

5       Dr. Hovsepian did not submit an additional letter in support of Plaintiff's application

6  because he was on sabbatical. (AR 2666.)

### 2. Dr. Oba's Second Letter

8       Dr. Oba submitted an additional letter in support of Plaintiff's application and in response

9  Dr. Selkirk and Dr. Bonson's conclusions that Plaintiff was not disabled. (AR 2394-2396.) Dr.

10 Oba noted the "precipitous drop" in Plaintiff's health starting with her February 2, 2022 office

11 visit, and her consistent presentation with significant pain throughout her body, weakness, fatigue,

12 and gait abnormalities since that date. (AR 2394.) While her symptoms of pain and fatigue were

13 "subjective in nature," other physical exam findings were clear including tremors, gait

14 abnormalities, and ataxia. (AR 2395.) He had personally observed signs of pain, fatigue, and gait

15 abnormalities. (AR 2395.) Plaintiff also used a cane due to her fall risk. (AR 2395.) Dr. Oba

16 responded to the reviewing physicians' suggestion that Plaintiff's failure to see other specialists or

17 try other medications undermined her symptom reports noting there was no clear indication for

18 either and "[h]er declining condition in the face of efforts to improve suggest[ed] that her

19 multifactorial condition is complicated and has been difficult to treat, not that her symptoms

20 [we]re not real." (AR 2395.)

### 3. Dr. Parameswaran's Letter

22      Plaintiff's rheumatologist Dr. Parameswaran noted she had seen Plaintiff five times for

23 severe debilitating pain. (AR 2399.) Dr. Parameswaran summarized Plaintiff's visits and noted

24 she had persistent pain throughout her visits with little improvement and she observed her leg

25 collapsing beneath her while walking during her Mary 2023 visit. (AR 2399.) She disagreed with

26 Dr. Bonson's conclusions, noting that Dr. Bonson had not reviewed Dr. Parameswaran's clinical

27 records which supported her findings of disability and documented that her physical exams of

28 Plaintiff, the labs, and imaging all supported her conclusion that Plaintiff had severe debilitating

1    and disabling chronic pain from fibromyalgia and osteoarthritis, in additional to multiple other

2    medical problems as discussed by Dr. Oba and Dr. Hovsepian. (AR 2400.)

### 4. Physical Therapist Anna Lawrence's Letter

Plaintiff's physical therapist Anna Lawrence submitted a letter in support of Plaintiff's appeal. (AR 2397-2398.) While Ms. Lawrence had only been treating Plaintiff since March 2023, Plaintiff had been a patient at More Physical Therapy since April 2022. (AR 2397.) She had started at two visits a week, but then increased to three seeking treatment of widespread pain, numbness, tension, and burning sensation in her neck, lower back, and both upper and lower extremities. (AR 2397.) Plaintiff presented with limited and painful cervical and lumbar active range of motion and generalized weakness as well as limited joint mobility and altered gait mechanics plus use of a cane. (AR 2397.) Plaintiff had limited tolerance to sitting, standing, walking, bright lights, and sound due to pain, stiffness, weakness, fatigue, balance impairments, migraines, and vertigo which prevented her from returning to work in any kind of full-time position. (AR 2398.)

### I. Prudential's Denial of Plaintiff's Second Appeal

At Prudential's request Dr. Selkirk and Dr. Bonson reviewed the additional information submitted in support of Plaintiff's application. Both concluded the additional evidence offered by Plaintiff's physicians did not alter their opinions generally for the same reasons as previously expressed. (AR 2528-2539, 2556-2567.) Prudential then asked for Dr. Parameswaran's "chart notes." (AR 2577.) Plaintiff provided her after-visit summaries which Dr. Bonson discounted because "[t]hese summaries do not convey clinical information." (AR 2615-2616.)

Prudential upheld its denial of Plaintiff's LTD claim. (AR 2700-2714.) It concluded "the information in file does not support impairment that would prevent her from performing the substantial and material acts necessary to pursue her usual occupation." (AR 2711.) This lawsuit followed.

### II. LEGAL STANDARD

The parties cross-moved for judgment under Federal Rule of Civil Procedure 52. Federal Rule of Civil Procedure 52 provides "[i]n an action tried on the facts without a jury or with an

advisory jury, the court must find the facts specially and state its conclusions of law separately." Fed. R. Civ. P. 52(a)(1). In resolving Rule 52 motions, "the Court conducts what is essentially a bench trial on the record, evaluating the persuasiveness of conflicting testimony and deciding which is more likely true." *McCulloch v. Hartford Life & Accident Ins. Co.*, No. 19-CV-07716-SI, 2020 WL 7711257, at *7 (N.D. Cal. Dec. 29, 2020) (citing *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1094–95 (9th Cir. 1999)).

## III. CONCLUSIONS OF LAW

### A. Standard of Review

The parties agree the standard of review is *de novo*. (Dkt. No. 25 at 25; Dkt. No. 26 at 7.) On *de novo* review, the court "examines the administrative record without deference to the administrator's conclusions to determine whether the administrator erred in denying benefits." *Collier v. Lincoln Life Assurance Co. of Bos.*, 53 F.4th 1180, 1182 (9th Cir. 2022). That is, the court "determines in the first instance if the claimant has adequately established that he or she is disabled under the terms of the plan." *Muniz v. Amec Constr. Mgmt., Inc.*, 623 F.3d 1290, 1295–96 (9th Cir. 2010). Plaintiff bears the burden of establishing her entitlement to benefits under the Plan by a preponderance of the evidence. *Id*.

For the reasons discussed below, Plaintiff has met her burden of showing it is more likely than not that she was disabled under the terms of the Plan as of May 11, 2022.

### B. Recovery of LTD Benefits under 29 U.S.C. § 1132(a)(1)(B)

#### 1. Plaintiff Has Met Her Burden of Demonstrating Disability

Plaintiff cannot establish disability merely through diagnosis. *See Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993) ("The mere existence of an impairment is insufficient proof of a disability. A claimant bears the burden of proving that an impairment is disabling") (cleaned up); *see also Shaw v. Life Ins. Co. of N. Am.*, 144 F. Supp. 3d 1114, 1129 (C.D. Cal. 2015) (collecting cases). Rather, the question is whether Plaintiff has demonstrated her symptoms rise to the level of disability within the meaning of the Plan. She has.

The record amply supports the finding Plaintiff could not work at her regular occupation as of May 11, 2022.

- Plaintiff began complaining of upper extremity tingling and pain with weakness in January 2022—three months before she stopped working—and her primary care physician Dr. Oba referred her to a neurologist and ordered an MRI.
- In his letter in support of Plaintiff's appeal, Dr. Oba stated he observed "a precipitous drop" in her health condition as of February 2022. Although Prudential contends Dr. Oba's contemporaneous treatment records do not document a "precipitous drop" in Plaintiff's condition, it has offered no basis to question Dr. Oba's credibility, and in fact, given his 20-year history as Plaintiff's primary care physician he is particularly well qualified to provide such an assessment.
- In March 2022, Dr. Oba referred Plaintiff to physical therapy and she started April 6, 2022.
- Despite bi-weekly physical therapy, Plaintiff continued to report symptoms in April and May, including new symptoms of dizziness, nausea, vertigo, involuntary shaking, and was using a walker because of difficulty walking. Dr. Oba found Plaintiff was unable to work due to her symptoms and Plaintiff stopped work on May 10, 2022.
- Plaintiff's treatment notes from her neurologist Dr. Hovsepian reiterate her symptoms of numbness and tingling, fatigue, and headaches prompting Dr. Hovsepian to diagnose cervical stenosis and radiculopathy, cervicogenic headaches/migraines, and lumbar radiculopathy.
- Dr. Oba's and Dr. Hovsepian's treatment notes over the ensuing months detail her continued symptoms despite physical therapy two to three times a week and treatment with Cymbalta.
- Plaintiff's treating ENT, Dr. Sajjadi, diagnosed vestibular migraine, imbalance, tremor, and hypothyroidism.
- In December 2022, Plaintiff's rheumatologist diagnosed fibromyalgia.
- All four of Plaintiff's four treating physicians, including her primary care physician of 20 years, uniformly agreed her pain and symptoms prevented her from working, based in part on their personal observations.

14

- Plaintiff's physical therapist's declaration attests to Plaintiff's need for assistance with activities of daily living and her need for frequent breaks to recover from overexerting herself to complete basic daily tasks. The physical therapist describes Plaintiff's limited tolerance to sitting, standing, walking, bright lights, and sound due to pain, stiffness, weakness, fatigue, balance impairments, migraines and vertigo; because her work environment would involve aspects of all these things, she could not return to full-time employment.

In sum, Plaintiff's consistent reports of pain and her efforts to obtain pain relief via physical therapy and follow-up visits with her primary care physician, neurologist, rheumatologist, and ENT support the credibility of her complaints of disabling symptoms. *See Sangha v. Cigna Life Ins. Co. of New York*, 314 F. Supp. 3d 1027, 1036 (N.D. Cal. 2018) ("[T]he consistency and severity of Plaintiff's complaints and her pursuit of medical treatment over time support her claim of disability"). And her treating physicians' personal and emphatic corroboration of the severity of her symptoms is further support. This evidence easily meets Plaintiff's burden.

Prudential's physicians' opinions do not persuade the Court otherwise. Their opinions rely entirely on the purported absence from Plaintiff's medical records of the objective findings they believed would support her reported symptoms. But the Ninth Circuit has repeatedly cautioned against requiring objective evidence for chronic pain conditions. *See Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 678 (9th Cir. 2011) ("Many medical conditions depend for their diagnosis on patient reports of pain or other symptoms, and some cannot be objectively established until autopsy. In neither case can a disability insurer condition coverage on proof by objective indicators such as blood tests where the condition is recognized yet no such proof is possible."); *Cruz-Baca v. Edison Int'l Long Term Disability Plan*, 708 F. App'x 313, 315 (9th Cir. 2017) ("Pain is an inherently subjective condition.").

Further, even though Plaintiff's primary care physician of 20 years explained why a mere record review was insufficient to evaluate the severity of Plaintiff's symptoms, Prudential chose to not have its record reviewers meet with Plaintiff, not even virtually. They never spoke to Plaintiff, to her caretaker spouse, or to any of her four treating physicians. Instead, they merely reviewed

15

Plaintiff's records and declared she can work without any restrictions whatsoever. In light of Plaintiff's evidence, and the nature of her disability, their document review opinions are not persuasive.

Moreover, the medical records in fact include objective support for Plaintiff's physicians' diagnoses. Dr. Oba observed Plaintiff's fatigue during in-person physical examination, and also noted physical exam findings of tremors, gait abnormalities, and ataxia. (AR 1639, 2395.) Plaintiff tested positive for vertigo. (AR 1241.) As to imbalance issues, the medical records report several incidents of falls (AR 707, 2176, 2181), Plaintiff's husband attested to several falls (AR 1922), Dr. Parameswaran observed a fall (AR 1640), and Dr. Hovsepian observed her walking with an unsteady gait (AR 261). Plaintiff was also observed using a cane or walker. (AR 1237, 1395, 1397.)

And the record does not support Prudential's repeated assertions of "normal" exam findings. For example, at oral argument, Prudential insisted Dr. Hovsepian's April 7, 2022 treatment records showed normal findings. Not so. On the very same page counsel quoted as showing normal neurological and gait findings, Dr. Hovsepian documented the following system findings:

> Review of Systems
> Constitutional: Positive for fatigue.
> Cardiovascular: Positive for palpitations.
> Allergic/Immunologic: Positive for food allergies.
> Neurological: Positive for tremors, weakness, light-headedness, numbness and headaches.
> Psychiatric/Behavioral: Positive for decreased concentration. The patient is nervous/anxious.

(AR 248.[4]) Likewise, while Prudential takes issue with Dr. Oba's statement in his December 2023 letter that he noted a "precipitous drop" in Plaintiff's overall health starting with her February 2, 2022 office visit, because there was no corresponding medical record for that visit, the record does not show that Prudential asked Plaintiff for this particular missing record. As Dr. Oba, Plaintiff, and Plaintiff's spouse repeatedly refer to the February 2, 2022 visit (AR 1636, 1655, 1664), the Court finds the medical record is missing from the administrative record, not that the visit did not

---

[4] Further, Prudential confirmed at oral argument that it did not request Dr. Hovsepian's records predating April 1, 2022 despite the fact that Dr. Hovsepian's July 13, 2023 letter in support states he saw her on February 15, 2022 and March 3, 2022. (AR 1634.)

happen as Prudential implies.  Further the record includes treatment notes for at least three visits with Dr. Oba as of May 11, 2022. (*Compare* AR 2394 (12/1/23 letter of support) *with* AR 817 (1/18/22 office visit); AR 1174 (4/8/22 office visit); AR 1230 (5/11/2022 office visit).)  And each of these 2022 office visits document the *same* symptoms Dr. Oba describes in his letter: "right upper extremity tingling/pain with right hand weakness" and "bilateral lower extremity pain/spasm history c/w dystonia" (AR 817); malaise and fatigue, palpitations, bilateral arm pain, and cervicalgia (AR 1174); vertigo, nausea, difficulty balancing, tinnitus, malaise and fatigue, cervicalgia, episodic confusion, and using a walker for stability (AR 1230).

While "plan administrators are not obliged to accord special deference to the opinions of treating physicians" in the ERISA context, they "may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003).  "[T]the only people to question whether [Plaintiff's] reported symptoms were real—were also the only people to not evaluate [her] in person." *Hamid v. Metro. Life Ins. Co.*, 517 F. Supp. 3d 903, 917 (N.D. Cal. 2021).  "[A]s compared to physicians who conduct only paper reviews, treating physicians are far better positioned to assess a claimant's credibility, and 'one would expect any doubts as to whether [Plaintiff] in fact suffered the pain he alleged ... would be reflected in the medical records.'" *Id.* (quoting *Shaikh v. Aetna Life Ins. Co.*, 445 F. Supp. 3d 1, 6 (N.D. Cal. 2020)).  Indeed, as Dr. Oba emphasized in his letter, it is "very difficult to clinically evaluate a patient based upon a review of a medical chart" because it "fails to properly consider the collective impact of all these co-morbidities, which render [Plaintiff] incapable of working any kind of regular job, even a sedentary one."  (AR 1639.)

At bottom, Prudential's argument is that Plaintiff's four treating physicians, her husband, and she herself are lying regarding the extent of her disabling pain.  But it offers nothing to credibly support this position.  Instead, it makes unreasonable inferences, such as since she did not improve from her 166 physical therapy treatments she must be lying.  The more reasonable inference is that notwithstanding substantial effort to get better, Plaintiff is disabled.  Plaintiff's testimony that she did not take *any* sick time during her 30 years of employment up until February 2022 further demonstrates the absence of any evidence of malingering.  (AR 1660.)

17

1 Nor has Prudential offered any reason to question the credibility of Plaintiff's treating
2 physicians. Instead, it attempts to poke holes at the medical record—because each of the four
3 physicians did not have the exact same diagnosis on each occasion they saw her, their opinions are
4 to be disbelieved. It is well-established that symptoms of fibromyalgia and other chronic pain
5 syndromes "wax and wane, and that a person may have bad days and good days." *Revels v.*
6 *Berryhill*, 874 F.3d 648, 657 (9th Cir. 2017) (cleaned up). To be sure, an insurer is not required to
7 conduct an independent medical exam of each insured who makes a claim. *See Kushner v. Lehigh*
8 *Cement Co.*, 572 F.Supp.2d 1182, 1192 (C.D. Cal. 2008). But having elected not to do so, its
9 insistence Plaintiff, her spouse, and all four of her treating physicians are not to be believed is not
10 persuasive.

11 Considering the totality of the evidence, including (1) Plaintiff's consistent reports of pain
12 and numbness in her extremities, dizziness, vertigo, imbalance, and headaches, as corroborated by
13 her husband and caretaker; (2) the numerous treatment options she pursued, including consulting
14 specialists in at least three different fields, as well as 166 physical therapy visits; and (3) her
15 treating physicians' uniform conclusion that her reports of symptoms were credible, Plaintiff has
16 shown she was unable to perform the substantial and material acts of her usual occupation as an
17 "Engineering Coordinator-New Business" with reasonable continuity as of May 11, 2022.

### 2. Plaintiff's Additional Arguments of Error

19 Plaintiff raises several procedural defects as to Prudential's consideration of her claim,
20 including that it failed to conduct a full and fair review. But when, as here, the Court conducts *de*
21 *novo* review, any such defects are immaterial because Prudential's handling of the claim has no
22 bearing on the Court's review. See *Gray v. United of Omaha Life Ins. Co.*, No. 2:23-CV-00630-
23 MCS-PLA, 2024 WL 324899, at *8 (C.D. Cal. Jan. 29, 2024) ("procedural defects in claim
24 handling are irrelevant to *de novo* review." ), aff'd, No. 24-700, 2024 WL 5001915 (9th Cir. Dec.
25 6, 2024); *see also Collier*, 53 F.4th at 1182 ("When a district court reviews *de novo* a plan
26 administrator's denial of benefits, it examines the administrative record without deference to the
27 administrator's conclusions to determine whether the administrator erred in denying benefits."); *cf.*
28 *Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 674 (9th Cir. 2011) ("Procedural

18

errors by the administrator are ... weighed in deciding whether the administrator's decision was an abuse of discretion." (emphasis added) (internal quotation marks omitted)).

## CONCLUSION

For the reasons discussed above, Plaintiff's motion for judgment is GRANTED and Prudential's cross-motion is DENIED. The record demonstrates Plaintiff's medical issues prevented her from working her job as of May 11, 2022. As discussed at oral argument, the parties are ordered to submit supplemental briefing on the issue of remedy. The parties shall meet and confer regarding a schedule for doing so and submit a stipulation with a proposed schedule by January 10, 2025.

This Order disposes of Docket Nos. 25, 26.

**IT IS SO ORDERED.**

Dated: January 3, 2025

JACQUELINE SCOTT CORLEY
United States District Judge